# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00704-COA

**MARCUS L. WESS A/K/A MARCUS LINDELL WESS**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:            07/23/2020
TRIAL JUDGE:                 HON. KATHY KING JACKSON
COURT FROM WHICH APPEALED:   JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      MARCUS L. WESS (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALEXANDRA ROSENBLATT
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                 AFFIRMED - 09/27/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.    Marcus L. Wess was indicted as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2007) on numerous charges. In January 2013, Wess pleaded guilty to burglary of a dwelling, kidnapping, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud. Subsequently, his original indictment was amended to reflect a change in the indictment's habitual-offender enhancement from section 99-19-83 to Mississippi Code Annotated section 99-19-81 (Rev. 2007). The trial court sentenced Wess as a habitual offender under section 99-19-81 to serve a total of forty years, day-for-day, in the custody of the Mississippi Department of

Corrections (MDOC).

¶2. Over six years later, Wess filed a motion for post-conviction collateral relief (PCR), which the circuit court denied. Wess appeals, asserting that the trial court imposed an "illegal sentence," or he was denied due process during sentencing because his sentence was a result of an unknowing and involuntary guilty plea or a fatally defective indictment, and he was not allowed to withdraw his guilty plea when the trial court "imposed a sentence exceeding the plea agreement." For the reasons addressed below, we find no error in the circuit court's denial of Wess's PCR motion. Accordingly, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. In October 2011, a Jackson County grand jury indicted Wess as a habitual offender under section 99-19-83 for burglary of a dwelling, aggravated assault, kidnapping, two counts of sexual battery, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud. In support of the habitual-offender enhancement, the indictment identified the dates, jurisdictions, cause numbers, offenses, and sentences for six prior convictions.

¶4. On January 18, 2013, Wess pleaded guilty to burglary of a dwelling, kidnapping, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud. At Wess's guilty plea hearing, his counsel represented to the trial court that Wess was entering an "open plea" in exchange for the State's agreement to amend the habitual-offender enhancement from section 99-19-83 to section 99-19-81 and to dismiss the counts of

2

aggravated assault and sexual battery. This information is also set forth in Wess's petition to plead guilty. At the end of the hearing, the trial court accepted Wess's guilty plea and deferred sentencing for two weeks. Additional details regarding Wess's guilty-plea hearing are discussed below.

¶5.     On the same day as the guilty-plea hearing, the trial court's Order Amending Indictment was entered in Number 2011-10,827(2) in the Jackson County Circuit Court,[1] which amended the habitual-offender enhancement from section 99-19-83 to section 99-19-81. Orders of nolle prosequi on the charges for aggravated assault and sexual battery were also entered that day.

¶6.     The trial court held Wess's sentencing hearing two weeks after his guilty-plea hearing. The State recommended a sentence of twenty-five years for burglary of a dwelling (with five to serve and the remaining on post-release supervision), thirty years for kidnapping, ten years for taking a motor vehicle, ten years for possession of a weapon by a felon, and three years for credit card fraud. The State recommended that all counts run consecutively to the burglary count, with "[t]he intent . . . that Mr. Wess serve a total of [thirty-five] years in the

---

[1] Although the Order Amending Indictment is not in the appellate record, we take judicial notice of it. *See Teal v. Jones*, 222 So. 3d 1052, 1057-58 (¶¶20-21) (Miss. Ct. App. 2017). In particular, the circuit court specifically references this order in its order denying Wess's PCR motion, *see Grogan v. State*, 89 So. 3d 617, 622 (¶13) (Miss. Ct. App. 2011) (reference in the circuit court's order to a prior order "is sufficient to take judicial notice of its existence"), and the docket entry description for the Order Amending Indictment provides that it amends the habitual-offender enhancement pursuant to section 99-19-83 in the original indictment to the habitual-offender enhancement pursuant to section 99-19-81, as entered in Book 429, Page 457.

3

custody of [MDOC], day-for-day."

¶7.     The trial court did not adopt the State's recommendation.  Rather, the trial court sentenced Wess as a habitual offender under section 99-19-81 and divided the charges into two groups for sentencing purposes.  In the first group, the court sentenced Wess to serve twenty-five years for the burglary conviction and thirty years for the kidnapping conviction, with the sentences set to run concurrently.  For the second group, the court sentenced Wess to serve ten years for taking a motor vehicle, ten years for possession of a weapon by a felon, and three years for each conviction of credit card fraud.  The court ordered the second group of sentences to run concurrently with each other but consecutively to the first group, for a total of forty years to serve in the custody of MDOC day for day.

¶8.     More than six years later, on October 28, 2019, Wess moved for post-conviction relief on three grounds.  First, Wess argued that his initial habitual-offender indictment under section 99-19-83 was "fatally defective" because it did not "charge . . . that Wess served at least one . . . year on each of the prior convictions used to secure habitual offender status." Second, Wess claimed that the State coerced him to plead guilty by threatening a sentence of life in prison without eligibility for parole.  Third, Wess argued that the trial court committed plain error by failing to give Wess an opportunity to withdraw his plea.  The circuit court denied Wess's PCR motion.[2]  Wess appealed.[3]

---

[2] The circuit court's July 20, 2020 order denying Wess's PCR motion does not comply with Mississippi Rule of Civil Procedure 54(c).  Effective July 1, 2018, Rule 54(c) requires that when a PCR motion is summarily dismissed pursuant to section 99-39-11(2)

4

## STANDARD OF REVIEW

¶9.     "We review a circuit court's denial or dismissal of a PCR motion for abuse of discretion." *Jackson v. State*, 323 So. 3d 1166, 1168 (¶8) (Miss. Ct. App. 2021).  In this regard, "[w]e 'will not disturb the [circuit] court's factual findings unless they are clearly erroneous.'" *Id.* (quoting *Purvis v. State*, 240 So. 3d 468, 470 (¶7) (Miss. Ct. App. 2017)). "Questions of law are reviewed de novo." *Id.*

## DISCUSSION

### I.     Time Bar

¶10.    Pursuant to Mississippi Code Annotated section 99-39-5(2) (Rev. 2020), "a defendant who has pleaded guilty and seeks relief under the Mississippi Uniform Post-Conviction Collateral Relief Act must file a PCR motion 'within three . . . years after entry of the judgment of conviction.'" *Hunt v. State*, 312 So. 3d 1233, 1234-35 (¶7) (Miss. Ct. App. 2021) (quoting Miss. Code Ann. § 99-39-5(2)).  Wess entered his guilty plea on January 18, 2013; the trial court sentenced Wess on February 1, 2013; and the court's sentencing order was entered on February 4, 2013.  Wess filed his PCR motion on October 28, 2019, well over

---

(Rev. 2020), "the order must identify the files, records, transcripts, and correspondence the court relied on and direct that certified copies of those documents be placed in the motion cause number's file."  We find, however, that the trial court's failure to strictly comply with Rule 54(c) in this case was harmless error because all the relevant information was, indeed, included in the appellate record.

[3] Although Wess's notice of appeal was untimely, Wess moved to reinstate his appeal or, in the alternative, for leave to file an out-of-time appeal.  The Mississippi Supreme Court granted that motion.

the three-year limitations period. Wess's PCR motion is time-barred unless he meets an exception to section 99-39-5(2).

¶11. Wess does not assert that any statutory exception to the time-bar under section 99-39-5(2)(a)-(b) applies in his case, nor do we find that any do. However, "errors affecting fundamental rights may [also] be excepted from procedural bars," *Rowland v. State*, 42 So. 3d 503, 505-06 (¶7) (Miss. 2010) (internal quotation marks omitted), *overruled on other grounds by Carson v. State*, 212 So. 3d 22, 33 (¶38) (Miss. 2016), including "the right to be free from an illegal sentence" and "the right to due process at sentencing[.]" *Jackson*, 323 So. 3d at 1169 (¶13). Wess asserts that his sentence was "illegal" or resulted in a "denial of due process during . . . sentencing" because it was the result of "an unknowing and involuntary guilty plea including coercion" and "a fatally defective indictment." Wess also asserts that his sentence was "illegal" because the trial  court did not allow him "an opportunity to withdraw his guilty plea [when] the court imposed a sentence exceeding the plea agreement." Wess, "as the movant, bears the burden of proving that a fundamental rights exception exists." *O'Neal v. State*, 281 So. 3d 274, 279 (¶16) (Miss. Ct. App. 2019). We find that Wess's assertions regarding this issue are without merit for the reasons we address below.

## II.    Involuntary Guilty Plea

¶12.    As one basis for his "illegal sentence" claim, Wess asserts that his guilty plea was involuntary. "'However, involuntary-guilty-plea claims do not fall under the fundamental-

6

rights exception.'" *Hodgin v. State*, 328 So. 3d 1279, 1281 (¶8) (Miss. Ct. App. 2021) (quoting *Johnson v. State*, 313 So. 3d 1104, 1105 (¶5) (Miss. Ct. App. 2021)). "As this Court explained in *Brown v. State*, 923 So. 2d 258 (Miss. Ct. App. 2006), "past precedent regarding the fundamental right to be free from an illegal sentence does not provide a back door method for raising an untimely post-conviction relief claim based on a claim of involuntariness of a guilty plea." *Id.* at 260 (¶4) (citation and internal quotation marks omitted). The same rule applies here. We find that Wess's involuntary-guilty-plea claim is time-barred.

¶13. Procedural bar aside, we also find that Wess's involuntary-guilty-plea claim is without merit. "A guilty plea is binding if entered voluntarily, knowingly, and intelligently," *Tanner v. State*, 332 So. 3d 382, 387 (¶13) (Miss. Ct. App. 2022), meaning that the defendant is 'advised concerning the nature of the charge against him and the consequences of the plea.'" *Carr v. State*, 291 So. 3d 1132, 1137 (¶18) (Miss. Ct. App. 2020) (quoting *Gaulden v. State*, 240 So. 3d 503, 507-08 (¶13) (Miss. Ct. App. 2018)). Wess, "as the movant, has the burden of establishing his involuntary-guilty-plea claim." *Id.* (internal quotation mark omitted). Upon review of the record, we find that Wess has failed to meet this burden.

¶14. The trial court began Wess's guilty-plea hearing by questioning him about his competency to plead guilty. Wess acknowledged that he was mentally, physically, and emotionally competent to plead guilty and that he was not under the influence of drugs or alcohol or suffering from mental illness or disability. Wess also acknowledged, in open court

7

and under oath, that he had read and understood his indictment and had discussed the charges with his lawyer.

¶15.    The State moved to nolle prosequi the charges of aggravated assault and two counts of sexual battery against Wess and acknowledged that Wess's habitual-offender enhancement would be amended from section 99-19-83 to section 99-19-81. Wess's counsel also represented to the trial court that Wess was entering an "open plea" in exchange for the State's agreement to amend the habitual-offender enhancement and dismiss the aggravated assault and sexual battery charges.

¶16.    With respect to the remaining charges, the trial court had the prosecutor read each charge to which Wess was pleading guilty: burglary of a dwelling, kidnapping, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud. Wess acknowledged that he understood each of the charges and that he was pleading guilty to these charges, and he repeated back to the court the maximum punishment he could receive for each conviction.

¶17.    The trial judge explained the sentencing process in detail to ensure that Wess understood he was pleading guilty as a day-for-day habitual offender under section 99-19-81. Specifically, the trial judge told Wess that because he was pleading guilty as a day-for-day habitual offender, if each of these sentences were set to run consecutively and Wess was given the maximum sentence for each one, he could get up to eighty-one years in the MDOC to be served day for day. The trial judge also told Wess that the State has "amended [the

8

habitual-offender enhancement] from life to serving all of it." Following the trial judge's explanation, Wess stated, "Yes, ma'am." The judge then asked Wess, "[Y]ou are a habitual offender, you understand that?" Wess answered, "Yes, ma'am." Again, later in the hearing, the judge asked Wess if, "[a]s to each one of" the charges, he was "pleading guilty as a habitual offender." Wess answered, "Yes, ma'am." The judge asked, "So you know whatever sentence you may get you have to serve every day of it?" Wess answered, "Yes, ma'am." The judge also explained to Wess that the court did not have to accept the State's sentencing recommendation and that it could decide on any sentence "up to the maximum." Wess testified that he understood.

¶18. The judge also thoroughly questioned Wess about the evidentiary basis for the habitual-offender enhancement under section 99-19-81, eliciting testimony from Wess that he had been convicted of burglary, had served five years, and had been committed to the penitentiary at least two other times. Wess's counsel also represented to the trial court that Wess had other multiple prior felonies, including "burglary and larceny of a dwelling" with a sentence of "six years with five-and-a-half suspended"; "burglary of a dwelling" with a sentence of "ten years with four suspended, six to serve"; "grand larceny" with a sentence of "one year"; and "robbery in Hinds County" with a sentence to serve "a term of seven years."

¶19. The judge also questioned Wess about the voluntariness of his guilty plea, specifically asking Wess whether he was "pleading guilty to these charges because you're guilty and no

9

other reason." Wess responded, "Yes, ma'am." Wess acknowledged that he had not been threatened or coerced into pleading guilty, and he had not been promised anything in exchange for pleading guilty. Wess also acknowledged that he was "fully satisfied with the services of [his] attorney."

¶20. The judge then explained to Wess the constitutional rights he was giving up by pleading guilty. As the judge explained to Wess, he was entitled to a speedy jury trial in which he would be presumed innocent, he would have the right to confront the witnesses against him, and the State would have the burden of proving he was guilty beyond a reasonable doubt. The judge also informed Wess that if he were found guilty, he had the right to appeal. Additionally, the judge told Wess that he could choose to testify at trial, but if he chose not to do so, that choice could not be used as evidence of his guilt. Wess acknowledged that he understood each of these points. The trial court then made a factual finding that Wess's plea had "been given freely and voluntarily with a full understanding of [his] constitutional rights and the consequences of [his] plea[]" and set Wess's case for sentencing two weeks later by agreement of counsel.

¶21. At the sentencing hearing, the trial court sentenced Wess as a day-for-day habitual offender under section 99-19-81, reminding Wess that he was "a habitual offender [and that] . . . the indictment was amended from the life to the day-for-day [habitual-offender enhancement], so all of these sentences will be served day-for-day." The trial court sentenced Wess as follows: twenty-five years to serve for the burglary conviction and thirty

years to serve for the kidnapping conviction, with these sentences set to run concurrently; and ten years for taking a motor vehicle, ten years for possession of a weapon by a felon, and three years for each of the two convictions of credit card fraud, with these sentences set to run concurrently with each other but consecutively to the first group, all to be served in the custody of MDOC for a total of forty years. The sentencing order also provided, "Further, [Wess] is to serve as [a] [h]abitual [o]ffender [d]ay for day, in the custody of [MDOC]."

¶22. We find that upon review of the guilty-plea and sentencing-hearing transcripts and the record on appeal, we find no clear error or abuse of discretion in the circuit court's finding that Wess knowingly, intelligently, and voluntarily pleaded guilty to burglary of a dwelling, kidnapping, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud; Wess understood he was pleading guilty pursuant to the day-for-day habitual-offender enhancement under 99-19-81; and Wess failed to meet his burden to establish the involuntariness of his guilty plea.

¶23. Wess asserts on appeal that the State used "the improper threat of a life[-]without[-]parole sentence" under the section 99-19-83 habitual-offender statute in the original indictment to "coerce" him to plead guilty. We find that this contention is without merit. This Court's decision in *Jones v. State*, 922 So. 2d 31 (Miss. Ct. App. 2006), supports our analysis. In that case, Jones asserted that he pleaded guilty because the State threatened to seek a life sentence at trial, and thus his guilty plea was "coerced." *Id.* at 35 (¶9). This Court rejected Jones's contention, recognizing that "[m]erely identifying a 'but for' cause to

11

the guilty plea, does not render the plea coerced." *Id.* at 35 (¶10) (quoting *Brady v. United States*, 397 U.S. 742, 749-50 (1970)). In other words, the Court held that "[t]he fact that a defendant pled guilty because he feared a harsher sentence otherwise, does not render the plea involuntary." *Id.* at (¶11). The Court also found it relevant that "Jones . . . testified under oath that he was not coerced into pleading guilty. He testified the only reason he was pleading guilty was because he was in fact guilty." *Id.* "Hence," this Court found that "Jones's plea was not coerced." *Id.*

¶24. Similarly, in *Williams v. State*, 328 So. 3d 222 (Miss. Ct. App. 2021), this Court rejected the defendant's assertion that his attorney "coerced" him to plead guilty "by telling him that if he went to trial, he would likely be found guilty and face life in prison." *Id.* at 225 (¶6). Citing *Jones*, 922 So. 2d at 35 (¶10), this Court observed that "[e]ven if [the defendant] pled guilty because he did not want to risk a potential sentence of life imprisonment, the maximum for this crime, it does not render his plea involuntary." *Williams*, 328 So. 3d at 226 (¶7). Further, we noted that the defendant "provided sworn testimony at the guilty-plea hearing that no one used threats, coercion, or physical violence to induce his plea. Accordingly, we find that this allegation is without merit." *Id.*; *see also Mayhan v. State*, 26 So. 3d 1072, 1076 (¶13) (Miss. Ct. App. 2009) (recognizing that "whether [the defendant] pled guilty to avoid a harsher sentence does not render his plea involuntary").

¶25. Like the defendants in *Jones*, *Williams*, and *Mayhan*, Wess asserts he pleaded guilty to avoid a possible life sentence. Identifying this "but for" cause of his guilty plea, however,

12

does not prove that his plea was involuntary. *See Brady*, 397 U.S. at 750; *Jones*, 922 So. 2d at 31 (¶¶9-11). Further, Wess, like Jones, acknowledged at his guilty-plea hearing that "the only reason he was pleading guilty was because he was in fact guilty," *Jones*, 922 So. 2d at 35 (¶11), and that he pleaded guilty without threat or coercion. These "solemn declarations in open court carry a strong presumption of verity." *Hill v. State*, 60 So. 3d 824, 828 (¶12) (Miss. Ct. App. 2011) (quoting *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978)). For the reasons stated above, we find that Wess's involuntary-guilty-plea claim is without merit.

### III. Defective Original Indictment

¶26. As a second basis for his "illegal sentence" claim, Wess asserts that his original indictment was defective because it did not state the amount of time he actually served on each prior conviction in setting forth the habitual-offender enhancement pursuant to section 99-19-83. Wess claims that the lack of this information rendered his sentence "illegal." For the reasons discussed below, we find that this contention does not constitute a "fundamental rights" exception to Wess's untimely PCR claim. His defective-indictment claim is therefore time-barred. His claim also is waived in light of our determination that Wess knowingly, intelligently, and voluntarily entered his guilty plea, as discussed above. Further, even if this contention were not time-barred or waived, it fails on the merits.

¶27. First, Wess's claim is based only on his assertion that his *original* indictment was defective because it did not include the amount of time he actually served on each prior conviction with respect to the section 99-19-83 habitual-offender enhancement. But Wess's

13

indictment was properly amended at his guilty-plea hearing to change the habitual-offender enhancement to the day-for-day habitual-offender enhancement under section 99-19-81.[4]

Wess makes no "defective indictment" argument with respect to the *amended* indictment.

---

[4] Although Wess claims that the State "never motioned" the trial court to amend Wess's indictment to section 99-19-81, he does not argue that the amended indictment was improper for this reason or cite any authority that would support such a proposition. Thus, even if Wess had contended that the amended indictment was improper, such an argument would be waived. M.R.A.P. 28(a)(7).

We also find that any such assertion would be without merit. "We review a trial court's decision to allow amendment of an indictment de novo." *Cork v. State*, 329 So. 3d 1183, 1190 (¶22) (Miss. 2021). In *Cork*, the Mississippi Supreme Court found no reversible error in the trial court's allowing an amendment to the defendant's indictment to reflect his habitual-offender status one day before trial, where the defendant could demonstrate no "interference with his ability to present a defense or unfair surprise." *Id.* at (¶23); *see also Holloway v. State*, 293 So. 3d 834, 837-38 (¶¶9-11) (Miss. Ct. App. 2019) (finding no error in the circuit court's allowing the State to amend the defendant's indictment at his plea hearing to charge him as a nonviolent habitual offender where the amendment did not materially alter the facts underlying the indictment or "seek a greater sentence," the defendant indicated at his plea hearing that he understood he was being charged as a nonviolent offender, and the defendant offered no objection to the amendment).

After review of the record before us, we likewise find no basis for a claim on Wess's part that he was "unfair[ly] surprised" by the amendment here, and we thus find no error in the trial court's amending the indictment at Wess's plea hearing to reflect the change in the habitual-offender enhancement provision to section 99-19-81 and sentencing him pursuant to this provision. In particular, Wess's own counsel represented to the trial court at the plea hearing that Wess was pleading guilty in exchange for the State's agreement to amend the habitual-offender enhancement from section 99-19-83 to section 99-19-81. The same information also was set forth in Wess's petition to plead guilty. Indeed, the amendment reduced the enhancement from life without eligibility for parole to a day-for-day sentence, and, as detailed above, Wess's statements at his plea hearing plainly showed he knew and understood that he was pleading guilty under the day-for-day habitual-offender enhancement in section 99-19-81. Further, neither Wess nor his counsel objected to the habitual-offender enhancement amendment. On these facts, we find no clear error or abuse of discretion in the circuit court's order denying post-conviction relief as it relates to the trial court's amending Wess's indictment at his plea hearing.

This point is relevant because although section 99-19-83 provides that the defendant must have been "sentenced to and *served* separate terms of one . . . year" on two prior felony convictions (emphasis added), section 99-19-81 does not depend on the length of time a defendant actually served. Rather, section 99-19-81 applies to defendants with two prior felony convictions and "who shall have been *sentenced* to separate terms of one . . . year or more." Miss. Code Ann. §99-19-81 (emphasis added). *This* requisite information was clearly delineated in the indictment. As such, we find that Wess has failed to even assert, must less prove, a defective-indictment fundamental-rights exception to the applicable three-year limitations period under section 99-39-5(2). This claim is time-barred.

¶28. Wess also waived his defective-indictment contention by knowingly, intelligently, and voluntarily pleading guilty pursuant to the day-for-day habitual-offender enhancement under section 99-19-81 without objecting in any way to the sufficiency or validity of his prior convictions or sentences. "When [defendants] plead[] guilty, they waive any argument against habitual-offender status if they fail to challenge the sufficiency or validity of prior felony convictions and sentences." *Nance v. State*, 309 So. 3d 1097, 1103 (¶27) (Miss. Ct. App. 2020).

¶29. At his plea hearing, Wess knowingly, intelligently, and voluntarily pleaded guilty to burglary of a dwelling, kidnapping, taking a motor vehicle, possession of a weapon by a felon, and two counts of credit card fraud; Wess repeatedly acknowledged that he was pleading guilty pursuant to the day-for-day habitual-offender enhancement under section

15

99-19-81; and Wess or his counsel specifically confirmed to the trial court his prior felony convictions and sentences exceeding one year. Wess made no objection at all to the sufficiency or validity of his prior felony convictions or sentences. Accordingly, Wess waived his defective-indictment claim. *Id.*; *Vanwey v. State*, 149 So. 3d 1023, 1024 (¶3) (Miss. 2014) (finding that the defendant "waived whatever contention she might have had with her habitual-offender status when she failed to challenge the sufficiency or validity of her two prior felony convictions and sentences at her plea hearing and then voluntarily and intelligently entered her guilty plea . . . as a habitual offender"); *Keyes v. State*, 304 So. 3d 637, 640-41 (¶7) (Miss. Ct. App. 2020) (finding that the defendant waived any contention regarding her habitual-offender status where she knowingly and voluntarily entered her plea as a habitual offender and did not challenge the sufficiency of her prior convictions in any way).

¶30. Lastly, even if Wess's defective-indictment claim were not untimely or waived, it would not entitle him to relief. As addressed above, we find that the indictment was properly amended to designate section 99-19-81 as the basis for his sentence enhancement, and the trial court sentenced him under that statute. Because section 99-19-81 applies to a defendant with two prior felony convictions and "who shall have been *sentenced* to separate terms of one . . . year or more" (emphasis added), the length of time the defendant actually served is not relevant. As such, the amended indictment was proper without having information about how much time Wess actually served, and Wess or his counsel confirmed he had multiple

16

(exceeding two) prior felony convictions with sentences of one year or more, thus satisfying the requirements of section 99-19-81.[5] For all the above-stated reasons, we find that Wess's defective-indictment assignment of error is without merit.

## IV. Lack of Opportunity to Withdraw Plea

¶31. As set forth above, at Wess's sentencing hearing, the State recommended that Wess serve a total of thirty-five years, day-for-day, in the custody of MDOC for the six charges to which he pleaded guilty. The trial court did not follow the State's recommendation but rather sentenced Wess to a total of forty years to serve day-for-day in the custody of MDOC. Wess asserts that his sentence was "illegal" because he was not allowed an opportunity to withdraw his guilty plea when the trial court exceeded the State's sentencing recommendation.

¶32. Wess relies on a particular subsection of Mississippi Rule of Criminal Procedure 15.4 in support of this assertion, namely subsection 15.4(a)(2)(C)(ii).[6] This subsection provides

---

[5] We also note that even with respect to section 99-19-83, although Mississippi Rule of Criminal Procedure 14.1, effective July 1, 2017, requires that the enhanced punishment portion of the indictment identify each prior conviction "by the name of the crime, the name of the court in which each such conviction occurred and the cause number(s), the date(s) of conviction, and, *if relevant, the length of time the accused was incarcerated for each such conviction*," (emphasis added), the italicized portion of Rule 14.1 was not a requirement under Uniform Rule of Circuit and County Court Practice 11.03 (Enhancement of Punishment), which was in effect when Wess's indictment was amended in 2013.

[6] This rule states that "[t]he prosecuting attorney and the defendant's attorney . . . may reach an agreement that upon entry of a plea of guilty . . . the prosecuting attorney may . . . [m]ake a recommendation to the trial court for a particular sentence, which the court may accept or reject." In this regard, "[i]f the court rejects the recommendation, the court must do the following on the record: . . . advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea[.]" MRCrP 15.4(a)(2)(C)(ii).

17

that if the trial court rejects the State's sentencing recommendation under a plea agreement, then the trial court must "give the defendant an opportunity to withdraw [his] plea." The Mississippi Rules of Criminal Procedure did not become effective until July 1, 2017—more than four years after Wess's 2013 guilty-plea and sentencing hearings. Additionally, although the comment to Rule 15.4(a) provides that it is "largely derived from former Rule 8.04(B) of the Uniform Rules of Circuit and County Court," *see* MRCrP 15.4 cmt., the language contained in Rule 15.4(a)(2)(C)(ii) was not a part of Uniform Rules of Circuit and County Court Practice 8.04(B) or 8.04(A), which provided only that "[i]t is within the discretion of the court to permit or deny a motion for the withdrawal of a guilty plea." URCCC 8.04(A)(5).

¶33. Wess acknowledges that Rule 15.4(a)(2)(C)(ii) was not in effect when he pleaded guilty and was sentenced, but he asserts that the current rule should be applied retroactively as a "substantive rule of constitutional law" or a "watershed rule[] of criminal procedure," citing *Teague v. Lane*, 489 U.S. 288 (1989), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), in support of this proposition. We find that Wess's assertions are without merit as addressed below.

¶34. In *Teague*, 489 U.S. at 310, the United States Supreme Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *See also Montgomery*, 577 U.S. at 200 (recognizing that "when a new

18

*substantive* rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule" within the *Teague* framework (emphasis added)). The *Teague* Court held that for a new rule of constitutional criminal law to be applied retroactively, it must (1) "place a category of primary conduct beyond the reach of the criminal law [or] prohibit the punishment for a class of defendants," *Nixon v. State*, 641 So. 2d 751, 755 (Miss. 1994) (citing *Teague*, 489 U.S. at 311), or (2) be a new "watershed rule[] of criminal procedure[.]" *Teague*, 489 U.S. at 311.

¶35. Rule 15.4(a)(2)(C)(ii) does not fall within this analysis. Even if the rule could be considered to have constitutional implications, Rule 15.4(a)(2)(C)(ii) is not "a new *substantive* rule [of constitutional law]," *Edwards v. Vannoy*, 141 S. Ct. 1547, 1555 n.3 (2021), because it does not "affect[] . . . the 'range of conduct or the class of persons that the law punishes.'" *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). It neither forbids criminal punishment of certain primary conduct, nor does it prohibit punishment for a particular class of defendant. *See Teague*, 489 U.S. at 310-11; *Nixon*, 641 So. 2d at 755. Rule 15.4(a)(2)(C)(ii) simply does not meet the first exception.

¶36. As for the second "watershed rul[e] of criminal procedure" *Teague* exception, it is no longer valid. In *Edwards*, 141 S. Ct. at 1560, the Supreme Court found that this exception was "moribund," and proceeded to "make explicit what has become increasingly apparent to bench and bar over the last 32 years: New procedural rules do not apply retroactively on federal collateral review." *Id.* We find the same rule is applicable on state collateral review

19

in Wess's case here. *See Cork*, 329 So. 3d at 1190 (¶23) (rejecting the defendant's assignment of error because, among other reasons, the defendant "cites no authority in support of the issue other than the newly adopted Mississippi Rule of Criminal Procedure 14(b)(2), . . . [which] does not apply to the case at hand [because] Cork's trial took place before its adoption"); *see also Manning v. State*, 929 So. 2d 885, 899 (¶¶35-36) (Miss. 2006) (discussing, pre-*Edwards*, the very limited retroactive application of "watershed rules of criminal procedure" under *Teague* and its progeny). For these reasons, we find that Wess's assertion that Rule 15.4(a)(2)(C)(ii) should be retroactively applied is without merit.

¶37. We also find that even if Rule 15.4(a)(2)(C)(ii) had been in effect, it does not apply in Wess's case. Rather, Rule 15.4(a)(2)*(B)* applies under the circumstances here. For ease of reference, we set forth both subsections in full:

> **(a) Entering into Plea Agreements.**
>
> . . . .
>
> (2) The prosecuting attorney and the defendant's attorney, or the defendant acting pro se, may reach an agreement that upon entry of a plea of guilty . . . to the offense charged or to a lesser or related offense, the prosecuting attorney may do any of the following:
>
> . . . .
>
> > (B) Make a recommendation to the trial court for a particular sentence, *with the understanding that such recommendation or request will not be binding upon the court*; *or*
> >
> > (C) Make a recommendation to the trial court for a particular sentence, which the court may accept or reject. If the court accepts the plea agreement, it must inform the defendant the agreed disposition will be

20

included in the judgment. If the court rejects the recommendation, the court must do the following on the record:

> (i) inform the parties that the court rejects the plea agreement;

> (ii) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

> (iii) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

MRCrP 15.4(a) (emphasis added). Our review of the record reveals that Rule 15.4(a)(2)*(B)*, *not* Rule 15.4(a)(2)*(C)*, applies in Wess's case. The record reflects that Wess entered an "open plea" with respect to his final sentence, and although the State recommended a sentence, the parties understood that the trial court would not be bound to accept the sentence. A plain reading of Rule 15.4(a)(2)(B) and (C) as a whole shows that because the State recommended a sentence "with the understanding that such recommendation or request [would] not be binding upon the court," MRCrP 15.4(a)(2)(B), the trial court was not required to give Wess an opportunity to withdraw his plea.

¶38. For all these reasons, we find that Wess's assertion that his sentence was "illegal" because he was not given the opportunity to withdraw his guilty plea is without merit.

## CONCLUSION

¶39. Accordingly, the circuit court did not abuse its discretion by denying Wess's PCR motion.

21

¶40.    **AFFIRMED.**

   **GREENLEE, WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR.  BARNES, C.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  LAWRENCE, J., NOT PARTICIPATING.**